MARK C. PHARES
EMILY OBERMILLER
Montana Department of Natural
Resources and Conservation
2705 Spurgin Rd.
Missoula, MT 59804
(406) 542-4341
mphares@mt.gov
cnd404@mt.gov

*Attorneys for Proposed Intervenor Montana DNRC*

FILED

MAY 30 2024
Clerk, U.S. Courts
District of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, NATIVE ECOSYSTEMS COUNCIL, YELLOWSTONE TO UINTAS CONNECTION, FRIENDS OF THE BITTERROOT, and WILDEARTH GUARDIANS,<br>　　　Plaintiffs,<br><br>vs.<br><br>TOM VILSACK, in his official capacity as Secretary of the Department of Agriculture; RANDY MOORE, in his official capacity as Chief of the Forest Service; MATTHEW ANDERSON, in his official capacity as the Bitterroot National Forest Supervisor; and DAN PLILEY, in his official capacity as the West Fork District Ranger, UNITED STATES FOREST SERVICE; and UNITED STATES FISH AND WILDLIFE SERVICE,<br>　　　Defendants. | NO. 9:24-cv-00010-DLC-KLD<br><br>MONTANA DEPARTMENT OF NATURAL RESOURCES AND CONSERVATION'S BRIEF IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE |

## I. INTRODUCTION

The State of Montana, Department of Natural Resources and Conservation (DNRC), has moved this Court for leave to intervene as a party defendant in the above-captioned action as a

matter of right under Fed. R. Civ. P. 24(a)(2), or in the alternative, for leave to intervene permissively as a party defendant under Fed. R. Civ. P. 24(b)(2)(A). DNRC submits this Brief in support of its Motion, along with a proposed Answer in accordance with Fed. R. Civ. P. 24(c).

## II. **FACTUAL BACKGROUND**

The Mud Creek Project ("Project") is located in the Bitterroot Mountains southwest of Darby, Montana on the West Fork Ranger District of the Bitterroot National Forest. The Project area encompasses approximately 48,486 acres and includes the entire West Fork Bitterroot River-Rombo Creek watershed and portions of the Nez Perce Fork-Nelson Lake, Little West Fork, West Fork Bitterroot River-Lloyd Creek, Lower Blue Joint, and West Fork Bitterroot River-Painted Rocks Lake watersheds in the Bitterroot Mountain Range. About 17,171 acres or 43% of the project area is in the Wildland Urban Interface (WUI). 29% of the project area is in an Ignition Density Community Protection Zone which was identified by modeling as the area with high probability of an ignition reaching private land. There are 1,897 acres of private lands and 166 acres of state of Montana lands within the Project area. Bitterroot Resource Conservation and Development (RC&D) has been managing grant funding for the past 20-years in the Bitterroot Valley, including in the West Fork where it has treated more than 800 acres of private lands.

The January 2023 Decision Notice and Finding of No Significant Impact authorizes a suite of management activities within the Project area. A total of 85,142 acres of treatments are authorized over a period of roughly 20 years. These treatments include the following types and upper limit of treatment acres, which includes overlapping acres:

— Commercial harvest – regeneration: 4,800 acres
— Commercial harvest – intermediate: 8,900 acres
— Non-commercial activities – 26,282 acres
— Prescribed fire – site preparation: 4,800 acres
— Prescribed fire – low severity: 28,235 acres

STATE'S BRIEF IN SUPPORT OF MOTION TO INTERVENE - 2

— Prescribed fire – mixed severity: 12,125 acres.

An estimated 15 million board feet of commercial timber will be harvested within the Project area. The implementation process identified in Appendix B of the EA is an essential component of the Project for accountability, tracking, decision-making, and documentation purposes. Under the condition-based management approach, specific locations and types of treatments will be identified or refined during implementation of the Project based on local conditions. Each year, public involvement will occur to discuss proposed activities and provide updates for ongoing and/or completed activities. The public, Tribes, and other stakeholders will have the opportunity to collaborate with the Forest Service at workshops and provide feedback for the proposed treatments identified. Upon the listing of whitebark pine as a threatened species effective January 17, 2023, the Forest has reinitiated consultation with the U.S. Fish and Wildlife Service.

### III. DNRC IS ENTITLED TO INTERVENE AS OF RIGHT PURSUANT TO Fed. R. Civ. P. 24(a)(2)

Parties seeking to intervene as of right under Rule 24, Fed. R. Civ. P., must demonstrate that four requirements are met: (1) the application is timely filed; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that, as a practical matter the disposition of the action may impair or impede the applicant's ability to protect its interest; and (4) the existing parties to the action will not adequately represent the applicant's interest. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). Courts generally construe the Rule 24(a)(2) requirements liberally in favor of applicant intervenors because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Society v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)).

### ARGUMENT

STATE'S BRIEF IN SUPPORT OF MOTION TO INTERVENE - 3

### a. Timeliness

The consideration of three factors assists the court in determining whether a motion to intervene is timely filed: (1) the stage of the proceedings at which the motion was filed; (2) whether the parties would be prejudiced by the applicant's intervention; and (3) the reason for and length of any delay in the applicant's motion. *U.S. v. State of Wash.*, 86 F. 3d 1499, 1503 (9th Cir. 1996). Delay is not measured from the date that the proposed intervenor learned of the litigation, but rather from the date it "should have been aware that its interests would no longer be protected adequately by the parties." *Id.* DNRC has filed its Motion roughly three months after the Complaint was filed. A motion to intervene at this early stage of the proceedings is timely. *See, e.g., Citizens for Balanced Use*, 647 F.3d at 897. Because the proceedings are at an early stage, the parties would not be prejudiced by allowing DNRC to intervene.

### b. Protectable Interest Relating to the Subject of the Action

Whether an applicant for intervention under Rule 24(a) demonstrates a sufficient protectable interest is "a practical, threshold inquiry, and no specific legal or equitable interest need be established." *Citizens for Balanced Use*, 647 F.3d at 897 (internal citations omitted). An applicant must merely establish that its interest is legally protectable and that there is a nexus between the interest and the claims raised in the action. *Id.* A prospective intervenor need not show that the interest asserted is protected by the statute under which the litigation is brought: "It is generally enough that the interest is protectable under *some law*, and that there is a relationship between the legally protected interest and the claims at issue." *Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478 (9th Cir. 1993), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (emphasis added).

### i. Legally Protected Interests

DNRC supports the Purpose and Need of the project. The project outcomes correspond to DNRC's interests in reducing wildfire risk, improving and restoring forest health, retaining the

STATE'S BRIEF IN SUPPORT OF MOTION TO INTERVENE - 4

forest industry, and reducing risks to public and firefighter health and safety. The Project aligns well with the State of Montana's Forest in Focus 2.0 initiative - adopted by then Montana Governor Steve Bullock in 2018 - which focuses on forest restoration and industry retention. There is a strong need to reduce the dense tree stocking and high fuel loading to lessen the intensity of wildfire behavior and facilitate safe wildland fire operations. It is also important to improve forest health and to address the resource and maintenance issues with the road network within the Project area. The Project will contribute to a sustainable timber industry and to the economic viability of the local communities.

The Project will increase diversity of vegetation - composition and structure - over a large landscape. This, in turn, will improve forest health and resiliency to wildfire impacts in the WUI near the Alta and West Fork communities and the Painted Rocks Reservoir recreation sites.[1] The Project area is within a Priority Area for Focused Attention due to risk to uncharacteristic wildfire risk.

DNRC has significant interests in reducing wildfire risks in the state of Montana due to its statutory mandate to "ensure the protection of land under state and private ownership and to suppress wildfires on land under state and private ownership.", Mont. Code Ann. §76-13-104(1)(a). The Project is not within DNRC's wildfire direct protection – areas that DNRC has the initial and primary duty to suppress wildfires - but DNRC supports wildfire protection through the County Cooperative Program. The County Cooperative program is a statutorily-created series of agreements DNRC enters into with all 56 Montana counties pursuant to Mont. Code Ann. §§ 7-33-2202(4)(b), and 76-13-105(3). DNRC invests significant resources into the

---

[1] DNRC owns the Painted Rocks dam and the reservoir area. DNRC must ensure that the reservoir is filled and operated safely and that water is available for delivery to the irrigation and in-stream fisheries contract holders. https://dnrc.mt.gov/Water-Resources/State-Owned-Dams-and-Canals/Painted-Rocks-Reservoir-Data

STATE'S BRIEF IN SUPPORT OF MOTION TO INTERVENE - 5

County Cooperative program, including providing organizational and technical assistance and advice, fire equipment, and training, and direct fire control assistance when needed. The Project area is adjacent to 1,897 acres of private lands that are under the protection of the County Cooperative program. The treatments are a priority to the county under its Community Wildfire Protection Plan (CWPP) due to risk for uncharacteristic wildfire impacts in the WUI.

Additionally, DNRC has an interest in the Project due to its mandates pursuant to §§ 76-13-104(1) and 76-13-702(3) – 702(9), Mont. Code Ann. (Increase Resiliency to Wildfire and Forest Health Impacts). DNRC supports the Project as critical work needed for cross-boundary stewardship of this landscape. This Project on federal lands, in combination with projects on state and private land, will significantly reduce wildfire risk in these WUI areas.

Fire risk to communities in the Project area is high. Ravalli County is among counties in MT with the highest wildfire risk. The Project advances DNRC's statutory mandate to promote forest health by reducing the risk of severe wildland fire to protect watersheds as well as public and firefighter safety. The Project will allow for safer engagement in the event of a wildfire, specifically providing for safe suppression tactics, safety zones and escape routes. Fire that starts on national forest can easily blow onto areas where DNRC has wildfire protection responsibilities, either directly or through County Cooperative agreements, and cause significant loss of structures and forage.

Vegetative conditions in the Project area have decreased the resilience of forest vegetation to future disturbances and stressors such as insects, disease, fire, and a warming climate. Fire suppression efforts since the early 20th century have caused a departure from historic fire regimes in the Project area, resulting in forest stands characterized by high stem densities, hazardous fuel build-up, and stressed tree conditions. This change in forest structure

STATE'S BRIEF IN SUPPORT OF MOTION TO INTERVENE - 6

has caused these areas to have high surface and ladder fuels, which increase susceptibility to uncharacteristic, high-severity fire behavior.

Fire will return to this landscape at some point in time. By implementing the treatments in the Project area, land managers can lessen the severity and intensity of these fires resulting in a healthier, more resilient forest. The thinning followed by burning will return the role of fire to this landscape and reduce the risk of high severity fire and impacts. Without treatments, stands will remain overcrowded with unnaturally high fuel loadings. The threat of large, stand-replacing wildfires and resulting impacts to habitat, property, infrastructure, and public and firefighter safety will compound as insect infestation and the warming and drying climate increasingly affect the area. There is a clear urgency for action and the treatments proposed with the Project are critical to alleviating the risk in this area.

The Project strongly aligns with goals in the Montana Forest Action Plan (MFAP), adopted in December 2020. Montana Forest Action Plan, https://dnrc.mt.gov/Forestry/Forest-Management/montana-forest-action-plan (link accessed May 30, 2024). The Project will increase diversity of vegetation (composition and structure) over a large landscape. This will improve forest health and resiliency to wildfire impacts in the WUI near Alta and West Fork communities and the Painted Rocks Reservoir recreation sites. The Project area is within a Priority Area for Focused Attention in the MFAP due to risk to impacts from uncharacteristic wildfire.

The Project provides commercial timber to support the local forest industry and economies, and contributes to retention of the timber industry in Montana. MFAP grant funding paid for the BMP road work after the sale went no bid. $400,000 in MFAP funding paid for 700 acres of non-commercial fuels thinning/piling and some landing rehabilitation.

DNRC and the Bitterroot National Forest have a signed <u>Good Neighbor Authority (GNA) agreement</u> to work collaboratively and provide capacity to increase the pace and scale of restoration across boundaries. Under this agreement, the DNRC will perform field and office preparation, advertise/award and administer four GNA timber sales:

Two Tough = 1552 acres  FFY 2024

Buck = 600 acres  FFY 2024

Ditch = 1200 acres  FFY 2025

Rombo = 900 acres  FFY 2026

   GNA Total = approximately 9,220 acres

### ii. Legally Protected Interests Relate to Plaintiffs' Claims

DNRC's interests in the Good Neighbor Authority timber sales and the fuel treatments designed to reduce wildfire hazard prompted it to seek intervention in this matter. Thus, DNRC has a significant legal interest as the state agency with the obligation to encourage sustainable management of public forests, forest restoration, wildfire suppression, Good Neighbor Authority implementation, reduction of wildfire risk, and the carrying out of other activities to improve the overall diversity and vigor of forested landscapes. Such claims are best answered by DNRC. DNRC has demonstrated its substantial interest in the Project. Granting the relief requested by Plaintiffs would likely have an adverse impact on the mandates outlined above. The effects on DNRC's legally protected interests thus have the potential to be "direct, immediate, and harmful," thereby satisfying the "interest" prong of Fed. R. Civ. P. 24(a)(2). *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1494 (9th Cir. 1995).

### iii. Practical Impairment

STATE'S BRIEF IN SUPPORT OF MOTION TO INTERVENE - 8

A proposed intervenor must demonstrate only that the outcome of litigation *may* impair its legally protectable interests, not that impairment is certain to occur. *U.S. v. City of Los Angeles, Cal.*, 288 F.3d 391 (9th Cir. 2002). As described above, Plaintiffs' requested relief, if granted, may have substantial consequences with respect to the Good Neighbor Authority timber sales within the Project area, and with respect to hazardous fuels reduction. If DNRC is not allowed to intervene, it will be unable to appeal a decision that has the potential to substantially impact its interests in this litigation.

### iv. Inadequate Representation

To satisfy the fourth requirement under Fed. R. Civ. P. 24(a)(2), an applicant for intervention must demonstrate that the existing parties will not adequately represent its interests. The burden of demonstrating inadequacy is satisfied if the applicant can show that representation of its interests by existing parties "may be" inadequate. *Citizens for Balanced Use*, 647 F.3d at 898 (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). In determining whether existing representation is adequate, the Court examines three factors: 1) whether the interest of an existing party is such that it will "undoubtedly" address all of the proposed intervenor's arguments; 2) whether an existing party is able and willing to make such arguments; and 3) whether the applicant would argue necessary elements to the action that other parties would not. *Id.*

DNRC's interests are not adequately represented by the existing parties. DNRC's interests are directly related to its statutory duties arising under Montana law, to improve forest health and conditions within the state and suppress wildfires, as well as its substantial interest in reducing risks to public and firefighter safety. These interests are not coextensive with the

STATE'S BRIEF IN SUPPORT OF MOTION TO INTERVENE - 9

interest of the existing parties. For the foregoing reasons, DNRC satisfies the legal requirements for intervention under Rule 24(a). and respectfully requests that this Court grant the State leave to intervene as of right.

### IV. Permissive Intervention is Appropriate if the State is not Entitled to Intervene as of Right

If this Court denies the State's request to intervene as of right, DNRC requests in the alternative to be allowed to intervene permissively pursuant to Fed. R. Civ. P. 24(b)(2)(A). This Court may grant permissive intervention to an applicant on a showing of: 1) independent grounds for jurisdiction; 2) a timely motion; and 3) a common question of law or fact between the movant's claim or defense and the main action. *Garza v. City of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1992). If an applicant satisfies the elements of Rule 24(b), it is then within this Court's discretion whether to allow intervention. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002).

#### a. Jurisdiction

The first requirement for permissive intervention is satisfied by the fact that this action concerns a federal question. The Plaintiffs allege that both the ESA and NEPA were violated by the USFS's approval of the Project.

#### b. Timeliness

In considering whether to allow permissive intervention, this Court must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As has been explained above, DNRC's motion has been timely filed at an early stage of the proceedings and will not cause undue delay or prejudice to either of the original parties. Moreover, DNRC's intervention will assist in the thorough and efficient resolution of the claims raised by Plaintiffs.

#### c. Common Claim or Defense

STATE'S BRIEF IN SUPPORT OF MOTION TO INTERVENE - 10

With regard to a common claim or defense, DNRC's protectable interest as outlined above goes directly to the heart of the both DNRC's and Defendants' assertions regarding crown fire hazard potential within the WUI and the adjacent community protection zone, as well as the various treatments designed to take these things into account. These defenses directly respond to Plaintiffs' claims and therefore satisfy the "common question" requirement for permissive intervention.

For the foregoing reasons, the State satisfies the legal requirements for intervention under Rule 24(b), and respectfully requests that this Court grant DNRC leave to intervene permissively if its request to intervene as of right is denied.

## CONCLUSION

In determining whether to grant a request for intervention, this Court must balance the efficient resolution of issues against potential prejudice or delay to existing parties. DNRC's intervention in this action weighs only in the former column. DNRC's motion was timely filed and the existing parties will experience no substantial delay or prejudice. Considerable harm to DNRC may occur if Plaintiffs' request for relief is granted and DNRC is unable to appeal. DNRC could suffer an immediate, direct, and adverse impact to its duty to address wildfire hazard, fuels treatment and the presence of Good Neighbor Authority timber sales that DNRC has the obligation to administer. Moreover, DNRC has a unique and important perspective as the state agency responsible for carrying out the duties outlined above. For the foregoing reasons the State is entitled to intervention as of right under Fed. R. Civ. P. 24(a)(2). In the alternative, the State requests this Court to exercise its discretion to allow the State to be heard permissively under Fed. R. Civ. P. 24(b)(2)(A).

DATED this 30th day of May 2024.

/s/ Mark C. Phares
MARK C. PHARES
EMILY OBERMILLER
Attorneys for Prospective Intervenor
Montana Department of Natural
Resources and Conservation

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was today served via the Court's CM/ECF system on all counsel of record.

/s/ Mark C. Phares
MARK C. PHARES
Attorney for Proposed Intervenor, Montana Department of Natural Resources and Conservation