ADAM R.F. GUSTAFSON
United States Department of Justice
Acting Assistant Attorney General
Environment & Natural Resources Division

SHAUN M. PETTIGREW (CA Bar No. 254564)
Senior Trial Attorney
Natural Resources Section
c/o NOAA, Damage Assessment
7600 Sand Point Way, NE
Seattle, WA 98115
(202) 532-5973
shaun.pettigrew@usdoj.gov

JOSEPH W. CRUSHAM (CA Bar No. 324764)
Trial Attorney
Wildlife & Marine Resources Section
150 M Street, N.E.
Washington, D.C. 20002
(202) 307-1145
joseph.crusham@usdoj.gov

*Counsel for Federal Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, NATIVE ECOSYSTEMS COUNCIL, YELLOWSTONE TO UINTAS CONNECTION, FRIENDS OF THE BITTERROOT, and WILDEARTH GUARDIANS,<br><br>      Plaintiffs,<br><br>          v. | Case No. 9:24-cv-00010-DLC-KLD<br><br>FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT |

BROOKE ROLLINS,[1] in her official              )
capacity as Secretary of the Department of      )
Agriculture; RANDY MOORE, in his                )
official capacity as Chief of the Forest        )
Service; MATTHEW ANDERSON, in his               )
official capacity as the Bitterroot National    )
Forest Supervisor; DAN PLILEY, in his           )
official capacity as the West Fork District     )
Ranger; UNITED STATES FOREST                    )
SERVICE, and UNITED STATES FISH                 )
AND WILDLIFE SERVICE,                           )
                                                )
        Federal Defendants,                     )
                                                )
RAVALLI COUNTY, MONTANA,                        )
                                                )
        Defendant-Intervenor,                   )
                                                )
    and                                         )
                                                )
STATE OF MONTANA DEPARTMENT                     )
OF NATURAL RESOURCES,                           )
                                                )
        Defendant-Intervenor.                   )
                                                )
_____         )

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Brooke Rollins, Secretary of the Department of Agriculture, is automatically substituted as a party.

# TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................1

II.     ARGUMENT.....................................................................................1

    A.      Plaintiffs' NFMA Claims Fail ..................................................1

    B.      Plaintiffs' NEPA Claims Fail ..................................................5

    C.      Plaintiffs' ESA Claims Fail .....................................................7

        1.      The Bull Trout BO Adequately Analyzes Effects from
            Roads....................................................................................8

        2.      Plaintiffs' "Mitigation Measures" Argument Fails...................12

III.    CONCLUSION................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Angeles v. U.S. Airways, Inc.*,
  No. C 12-05860 CRB, 2013 WL 622032 (N.D. Cal. Feb. 19, 2013)....................8

*Ctr. for Biological Diversity v. United States Forest Serv.*,
  687 F. Supp. 3d 1053 (D. Mont. 2023) ...................................................6

*Ctr. for Biological Diversity v. Bernhardt*,
  982 F.3d 723 (9th Cir. 2020)...................................................... 12, 13

*Ctr. for Biological Diversity v. United States Bureau of Land Mgmt.*,
  746 F. Supp. 2d 1055 (N.D. Cal. 2009) ................................................14

*Earth Island Inst. v. Gibson*,
  834 F. Supp. 2d 979 (E.D. Cal. 2011)...................................................7

*Earth Island Inst. v. United States Forest Serv.*,
  87 F.4th 1054 (9th Cir. 2023)..........................................................3

*Gifford Pinchot Task Force v. United States Fish & Wildlife Serv.*,
  378 F.3d 1059 (9th Cir. 2004)..........................................................9

*Hurry v. Fin. Indus. Reg. Auth.*,
  782 F. App'x 600 (9th Cir. 2019).......................................................1

*Jacobs v. Hildebrand*,
  No. CV20149BLGSPWKLD, 2022 WL 18670208 (D. Mont. Dec. 19, 2022).....7

*Karuk Tribe of Cal. v. United States Forest Serv.*,
  681 F.3d 1006 (9th Cir. 2012)..........................................................9

*Lands Council v. McNair*,
  537 F.3d 981 (9th Cir. 2008)...........................................................7

*Native Ecosystems. Council v. Weldon*,
  No. 10-cv-57-M-DWM, 2011 WL 13193257 (D. Mont. June 7, 2011) ...............3

*Wasco Prods., v. Southwall, Techs., Inc.,*
  435 F.3d 989 (9th Cir. 2006)...........................................................3

**Statutes**

16 U.S.C. § 1536(b)(4)...................................................................13

**Rules**

Fed. R. Civ. P. 25(d) .....................................................................1

**Regulations**

36 C.F.R. § 219.12(c)(1)................................................................4

36 C.F.R. § 219.13(c)....................................................................5

36 C.F.R. § 219.9(6) ......................................................................4

50 C.F.R. § 402.02 ........................................................................15

50 C.F.R. § 402.14(g)(3)................................................................15

50 C.F.R. § 402.14(i)(6).................................................................13

## I.    INTRODUCTION

Federal Defendants' opening brief demonstrated that the government complied with NEPA, NFMA, and the ESA in approving the Mud Creek Project, and that Plaintiffs' various challenges lacked merit. Rather than defend their claims and theories of liability, Plaintiffs ignore most of Federal Defendants' opening brief and instead try to pivot to new claims and arguments. For the reasons explained below and in Federal Defendants' opening brief, Plaintiffs' claims fail, and the Court should enter judgment for Federal Defendants.

## II.    ARGUMENT

### A.    Plaintiffs' NFMA Claims Fail

Plaintiffs' amended complaint alleged that the Forest Service improperly used site-specific amendments to amend the Forest Plan's elk habitat and old growth standards. ECF No. 43 ("Am. Compl.") ¶¶ 190-94. In their opening brief, Plaintiffs argued only that the amendments to the elk habitat standards were improper. ECF No. 56 ("Pls.' Br.") 12. Federal Defendants explained that Plaintiffs lack standing to bring this claim and that even if they had standing, the Forest Service's site-specific amendments were proper. ECF No. 61 ("Fed. Defs.' Br.") 6-11. Plaintiffs concede that this claim lacks merit by not responding to those arguments. *See Hurry v. Fin. Indus. Reg. Auth.*, 782 F. App'x 600, 602 (9th Cir.

2019) ("Plaintiffs' failure to respond to that argument constitutes waiver." (citations omitted)).

The amended complaint's third claim also alleged that the "Forest Service's failure to use the Forest Plan definition of old growth" (meaning the definition without the Project specific amendment) meant the agency could not "demonstrate compliance with Forest Plan old growth standards for retention and viability." Am. Compl. ¶ 202. Plaintiffs pursued this same claim in a few short paragraphs in their opening summary judgment brief. Pls.' Br. 15-16. Federal Defendants explained that this claim was entirely derivative of Plaintiffs' abandoned claim that the Forest Service somehow improperly amended the Forest Plan's definition of old growth on a site-specific basis. Fed. Defs.' Br. 12-13. Further, Federal Defendants explained that Plaintiffs ignored that "all old growth in the Project area will be retained." *Id.* at 13.

Rather than responding to those arguments, Plaintiffs obtained an extension of their reply deadline ostensibly due to concerns about client availability, ECF Nos. 70-71, retained new counsel who appeared the day of that extended deadline, ECF No. 72, and now attempt to entirely recast their NFMA claim. In doing so, Plaintiffs expend six pages claiming for the first time that the Forest Service violated Forest Plan standard F.1.e.1 regardless of the Project specific old growth amendments by not showing that the Project will "ensure sufficient habitat for old

2

growth management indicator species, namely, the pine marten." ECF No. 73

("Pls.' Resp.") at 7; *see id.* at 7-12. Plaintiffs specifically claim that the Forest

Service did not conduct "population trend monitoring" of marten under the Forest

Plan. *Id.* at 8.

But Plaintiffs neither brought nor pursued such a claim, and the Court should

not countenance Plaintiffs' improper attempt now to "flesh out inadequate

pleadings" in their reply brief.[2] *Wasco Prods. v. Southwall Tech.*, 435 F.3d 989,

992 (9th Cir. 2003) ("[S]ummary judgment is not a procedural second chance to

flesh out inadequate pleadings."); *see also Earth Island Inst. v. U.S. Forest Serv.*,

87 F.4th 1054, 1073 (9th Cir. 2023) (explaining that Forest Service or other

agencies need not "act as mind readers and foresee all possible unalleged claims

that *may* fall under a complaint"); *Native Ecosystems. Council v. Weldon*, No. 10-

cv-57-M-DWM, 2011 WL 13193257, at *15 (D. Mont. June 7, 2011) (rejecting

---

[2] Plaintiffs disingenuously claim that Federal Defendants' opening brief "fail[ed] to acknowledge and respond to" this new claim. Pls.' Resp. 7. To be clear, the amended complaint and Plaintiffs' opening brief each include only a single fleeting reference to pine marten, neither of which says anything about population trend monitoring. Am. Compl. ¶ 94; Pls.' Br. 15. Plaintiffs have never asserted that the Project violated Forest Plan standard F.1.e.1 for any reason other than that the Forest Service should have used the original narrow Forest Plan old growth definition rather than the more expansive amended definition. *See* Am. Compl. ¶¶ 196-203; Pls.' Br. 15-16.

Plaintiffs' practice of "conjuring new claims and arguments on summary judgment").

Further, even if Plaintiffs had brought such a claim, it fails for a simple reason: The Project will not remove any stands from old growth status. MC15050 ("Implementation of the proposed action is designed to retain old growth status for any stands being treated that meet the Green et al. (1992, errata corrected 2011) criteria."). Standard F.1.e.1 provides that "[t]he amount and distribution of old growth will be used to ensure sufficient habitat for the maintenance of viable populations of existing native and desirable non-native vertebrate species, including two indicator species, the pine marten and pileated woodpecker." MC24. Because the Project will not affect the "amount and distribution of old growth" in the Project area, Plaintiffs cannot show a violation of this standard.

And even if Plaintiffs could show any change to the amount and distribution of old growth habitat, they misunderstand the Forest Service's population monitoring duty. The Forest Plan, issued in 1987, provided for monitoring of pine marten under 36 C.F.R. § 219.9(6) (1986) by measuring "3 transects annually." MC128. This requirement came from the Forest Service's 1982 Planning Rule, which was revised in 2012. The 2012 Planning Rule required national forests to modify monitoring programs within four years and then conduct a biennial evaluation of the program. 36 C.F.R. § 219.12(c)(1), (d). In 2016, the Bitterroot

4

National Forest updated its Plan Monitoring Program and administratively changed the Forest Plan under 36 C.F.R. § 219.13(c) to include the updated program. *See* Exs. 1 (plan), 2 (administrative change).[3] The updated monitoring program does not require transects but instead provides that the Forest may use "transects *or other methodologies*" to identify marten population trends. Ex. 1 at 58 (emphasis added). As detailed in the 2022 Biennial Monitoring Report, the Forest Service has used the "proven methodology" of winter multi-carnivore bait stations to monitor marten population trends. MC6856-57. This satisfied the Forest Service's marten monitoring duty.[4] Plaintiffs' misunderstanding of that duty would not establish a NFMA violation even if they had properly brought such a claim.

**B.    Plaintiffs' NEPA Claims Fail**

Plaintiffs' opening brief argued that Federal Defendants violated NEPA by not preparing an environmental impact statement. Pls.' Br. 9-13. Federal Defendants explained that Plaintiffs were wrong. Fed. Defs.' Br. 14-16. Plaintiffs concede this claim by not responding to those arguments.

---

[3] Had Plaintiffs properly brought this claim, these documents could have been included in the Forest Service's administrative record lodged on April 17, 2024. *See* ECF No. 20. Although the Court should not reach the merits of Plaintiffs' unalleged claim, Federal Defendants provide the documents now for the Court's convenience.

[4] Plaintiffs wrongly suggest that the Forest Service is relying on habitat as a proxy for marten population monitoring. Pls.' Resp. 8-12.

Plaintiffs also argued that the final EA violated NEPA by failing to take a hard look at the Project's potential climate impacts, mischaracterizing the analysis in the EA and supporting documents as "cookie-cutter." Pls.' Br. 16-17. As detailed in Federal Defendants' response, there was nothing "cookie-cutter" about the Forest Service's thorough consideration of potential climate impacts. Fed. Defs.' Br. 16-18. Plaintiffs now rely exclusively on *Center for Biological Diversity v. U.S. Forest Service ("Black Ram")*, 687 F. Supp. 3d 1053 (D. Mont. 2023), to argue otherwise. Pls.' Resp. 3-6. As this Court recently found in analogous circumstances, Plaintiffs are wrong. *See* Ex. 3, *Center for Biological Diversity v. U.S. Forest Serv. ("South Plateau")*, No. 9:23-cv-110-DLC (D. Mont. March 31, 2025), Findings & Recommendation ("*South Plateau* F&R") 60-63, ECF No. 69.

In *Black Ram*, "the fatally inadequate, 'cookie-cutter' analysis depended on a verbatim reproduction of analysis from another forest." *South Plateau* F&R 62 (citing *Black Ram*, 687 F.3d at 1074 n.7). Plaintiffs have shown no similar circumstances here. Instead, the final EA, vegetation report, and Forest carbon assessment provided substantial information about carbon storage on the Forest, factors that affect that storage, and the potential effects of the Project, which will improve forest resiliency to wildfire and other disturbances. Fed. Defs.' Br. 16-17. This analysis provides a reasonably thorough discussion of the issue in proportion to its significance, and Plaintiffs have "failed to show that the [Forest Service's]

6

conclusions regarding climate related impacts are unscientific." *South Plateau* F&R 63. The Forest Service's scientific determinations as to potential climate impacts are entitled to deference. *See Earth Island Inst. v. Gibson*, 834 F. Supp. 2d 979, 990 (E.D. Cal. 2011) (noting in considering Forest Service climate analysis that "courts are to be 'most deferential when the agency is making predictions, within its area of special expertise, at the frontiers of science.'" (quoting *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (en banc)). Just as in *South Plateau*, the Forest Service took a hard look at the Project's potential effects on climate.

### C.    Plaintiffs' ESA Claims Fail

Plaintiffs' response does not mention whitebark pine, much less address Federal Defendants' arguments. Plaintiffs thus abandon these ESA claims. *Jacobs v. Hildebrand*, No. CV-20-149-BLG-SPW-KLD, 2022 WL 18670208, at *12 (D. Mont. Dec. 19, 2022) (ignoring defendants' summary judgment arguments abandons claim).

As to bull trout, Plaintiffs' initial arguments included that FWS failed to properly consider climate change, recovery, and road decommissioning, as well as questioning FWS's finding that RHCAs reduce sediment delivery. *See* Pls.' Br. 20-22. Plaintiffs now abandon their initial arguments by neither mentioning them nor responding to Federal Defendants' rebuttals, and they also concede Federal

Defendants' affirmative bull trout arguments by ignoring them. *Angeles v. U.S. Airways, Inc.*, No. C 12-05860 CRB, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) (failure to respond amounts to "concession").[5]

Instead, Plaintiffs pivot to a new, meritless temporary road claim and a reframed—even more flawed—version of their "mitigation measures" argument.

### 1. The Bull Trout BO Adequately Analyzes Effects from Roads.

Plaintiffs now assert that the Bull Trout BO is unlawful because it does not include a "detailed discussion" of the effects from temporary roads "built" in RHCAs. Pls.' Resp. 12-18.[6] This argument—improperly raised for the first time in their response and absent from the amended complaint—fails. *See supra* at 3.

At the outset, this new argument rests on an inaccuracy—that "the Forest Service plans to build an undisclosed number of temporary roads within" RHCAs. Pls.' Resp. 13-14. All temporary roads built as part of the Project "would be located outside of RHCAs." MC11788. "In a few instances where road prisms *already exist* in RHCAs (e.g., undetermined roads)" such prisms "could be *used* as temporary roads" if there are culverts at stream crossings and "dirt is not side-

---

[5] Relatedly, Federal Defendants argued that Plaintiffs failed to expressly challenge FWS's critical habitat determination. Fed. Defs.' Br. 20 n.8. Plaintiffs' failure to respond concedes this argument.

[6] Though framed also as an attack on FWS's baseline analysis, Plaintiffs' argument concerns only Project effects from roads in RHCAs. They identify no deficiencies in FWS's baseline analysis. FWS20-30.

8

casted within the RHCA." *Id.* (emphasis added);[7] FWS35. Thus, precisely to *avoid* effects from building roads in RHCAs, the Forest Service may use existing undetermined prisms as temporary roads. Plaintiffs' attempt to twist this facet of the Project into a flaw with the Bull Trout BO fails.

In essence, Plaintiffs argue that the Bull Trout BO is arbitrary and capricious because FWS did not "disclose" every prism that will be temporarily used within RHCAs. Pls.' Resp. 14-17. But the ESA contains no such requirement. Rather, so long as FWS considers all effects of an agency action, courts defer to FWS's approach in rendering its jeopardy determination. *See Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059, 1066-67 (9th Cir. 2004) ("[T]he ESA does not prescribe how the jeopardy prong is to be determined."); *Karuk Tribe of Cal. v. U.S. Forest Serv.,* 681 F.3d 1006, 1020 (9th Cir. 2012).

Indeed, this Court rejected a similar argument in *South Plateau*. There, plaintiffs alleged that because the Forest Service had "not specified locations and timing for temporary roads," FWS's BO was flawed. *South Plateau* F&R 46.[8] The Court noted that "FWS is owed deference in deciding how to approach the jeopardy determination" so long as effects of the action "have been considered and

---

[7] "Undetermined roads are existing road prisms on the landscape constructed for past management activities." MC10538.

[8] Contrary to Plaintiffs' claims, Pls.' Resp. 6, the Forest Service mapped all potential road work for the Project. MC10791-809; MC10814.

addressed." *Id.* at 47. Thus, FWS "employed a reasonable, justifiable approach" when it focused on impacts to a key predictor of grizzly bear survival rather than the location/timing of roads. *Id.* at 48.

Similarly, here, FWS was not required to focus on the location of specific existing road prisms that could be temporarily used within RHCAs. Rather, in considering the effects of the action, it was within FWS's discretion to anchor its analysis on each demographic unit level of bull trout per its Recovery Plan, FWS18-24, FWS43-44, and employ its species-specific framework to analyze baseline conditions and Project effects. FWS14; FWS24-42. As part of this analysis, FWS analyzed specific roads of concern near bull-trout-bearing streams and critical habitat. FWS35-38. Plaintiffs imply that this required FWS to engage in a site-specific analysis for the few undetermined prisms in RHCAs that could be used as temporary roads. Pls.' Resp. 16-17; FWS35. But FWS considered that log hauling could occur on roads within RHCAs. *See* FWS10; FWS26. And the record shows that the relevant undetermined prisms are not near bull-trout-bearing streams or critical habitat.[9] Moreover, in assessing all potential sedimentation

_____

[9] Record maps identify three short undetermined roads for potential use as temporary roads before decommissioning. *See* MC10794 (FR 74414 and 74416 for decommissioning), MC10799 (FR 74415 for decommissioning); MC10814 (temporary roads, including FR 74414-16). None of them are near bull-trout-bearing streams or critical habitat. *Compare id. with* MC11793 (occupied/critical bull trout habitat map). Only one of them enters an RHCA and crosses a stream— FR 74416—and it is across the non-bull-trout-bearing One Creek. *Id.*; MC12408

effects, FWS considered the maximum number of log hauls authorized by the Project, which would include hauls that utilize existing prisms. *See* FWS35-37.

Ultimately, FWS recognized that log hauling and culvert removals "will result in adverse effects to bull trout due to increased sediment delivery to occupied bull trout habitat[.]" FWS49. But FWS determined that design features would reduce these effects. FWS50. FWS also found that the Project would *decrease* sediment from baseline levels in the moderate term by applying BMPs, and in the long term by reducing road crossings and densities, including within RHCAs. FWS49; FWS41 (Project removing 11.01 miles of road in RHCAs).

Plaintiffs focus on the sidecasting prohibition, claiming it insufficiently minimizes effects, Pls.' Resp. 15,[10] but disregard the many other design features in place to reduce sediment delivery. For example, if existing prisms are used for log hauling, they must be brought up to BMP standards, and activities like snow plowing must comply with minimization measures. *See* FWS9-10. Plaintiffs note that sediment delivery is a concern for "roads within 100 feet of streams," but ignore that if existing prisms fit that definition, they will be graveled to reduce

(RHCA map); *see* FWS38 (decommissioned roads are "outside of bull trout habitat," and culvert removal when decommissioning roads would occur on "non-fish bearing stream reaches").

[10] Prohibiting sidecasting complies with the INFISH standards in the Forest Plan, MC11857-59, and avoids one of the "highest risk[s] for sediment delivery," FWS37.

sediment per current BMPs. FWS9.[11] These are just a few of the many design

features that FWS reasonably considered in reaching its no-jeopardy finding.

FWS6-10.

In short, FWS considered all potential effects of the Project and "employed a

reasonable, justifiable" approach in rendering its no jeopardy determination. *See*

*South Plateau* F&R 48. The Court should defer to FWS's expert analysis and reject

Plaintiffs' last-ditch attempt to undermine the Bull Trout BO.

### 2.    Plaintiffs' "Mitigation Measures" Argument Fails.

Plaintiffs originally argued that FWS improperly considered the effects of

design features in rendering the Bull Trout BO. Pls.' Br. 21–22. Federal

Defendants explained that this argument was misplaced because the design

features are part of the proposed action. Fed. Defs. Br.' 20-21. Plaintiffs ignore and

thus concede their design feature argument. Regardless, this Court just ruled for

the government on this issue. *South Plateau* F&R 48-51 ("design features" were

"integral parts of the agency action" such that "analogy to *Center for Biological*

*Diversity v. Bernhardt* [982 F.3d 723 (9th Cir. 2020)] fail[ed]").

Plaintiffs now pivot to the Incidental Take Statements' ("ITS") terms and

---

[11] Plaintiffs claim that prisms-used-as-temporary-roads pose a "chronic
sedimentation" risk like the Nez Perce Fork Road, which is partially within an
RHCA. Pls.' Resp. 16. Not so. Unlike the Nez Perce Fork—a high-use public
road—temporary roads would be used only for Project activities and removed after
they are completed. FWS7; FWS27.

conditions, dubbing them unenforceable "mitigation measures." Pls.' Resp. 18-23 (citing *Bernhardt*, 982 F.3d at 743). This also fails.

First, terms and conditions are not "mitigation measures." Rather, they implement the "reasonable and prudent measures that [FWS] considers necessary or appropriate to minimize" incidental take. 16 U.S.C. § 1536(b)(4). Here, the ITS provides that the Forest Service "must ensure compliance" with the terms and conditions to be exempt from take liability. FWS54 (terms are "non-discretionary" and each "shall be implemented"); 50 C.F.R. § 402.14(i)(6).

Even if incorrectly construed as "mitigation measures," the terms and conditions are "undoubtedly of sufficient definiteness," "manifest a clear commitment of agency resources." and are a "far cry from the unspecified, aspirational measures" in *Bernhardt. See South Plateau* F&R 50. For example, Term and Condition C is not a "plan-to-make-a-plan." Pls.' Resp. 26. It is a requirement for the Forest Service to "devise and implement a long-term solution" to minimize sediment delivery on a specific road of concern before implementing a specified part of the Project, or else relinquish take protection. FWS55.[12]

_____

[12] Plaintiffs repeat their refrain that Term and Condition B is vague without providing any support—past the inapplicable *Bernhardt*—that FWS must specify how the Forest Service determines whether roads pose a "high risk" of delivering sediment to streams. Pls.' Resp. 20; Fed. Defs.' Br. 22; *see Ctr. for Biological Diversity v. United States Bureau of Land Mgmt.*, 746 F. Supp. 2d 1055, 1125-26 (N.D. Cal. 2009) (upholding term and condition requiring BLM to develop "standard mechanism" for reporting take).

Plaintiffs also muse about other measures FWS could have included. Pls.'
Resp. 21-22. But the ESA "does not require FWS to specify any particular
[reasonable and prudent measures]." *Ctr. for Biological Diversity*, 746 F. Supp. 2d
at 1125 (noting Congress "left the complex policy decision" about what measures
are "necessary and appropriate" to FWS's discretion (citation omitted)). Plaintiffs
cannot attack the Bull Trout BO on the basis that FWS should have included more
terms and conditions in the ITS.

Finally, in another argument raised for the first time, Plaintiffs now argue
that the Bull Trout BO fails to analyze the effects of Term and Condition D, which
mandates removing "the Flat Creek culvert barrier on FR 468" before
implementing a phase of the Project to maintain take coverage. Pls.' Resp. 22-23;
FWS55. This argument also fails.

The Bull Trout BO analyzes the effects of the Project, which includes some
culvert removals. FWS37-38. But the Flat Creek culvert work is not part of the
challenged Project—it was separately authorized and analyzed years ago along
with a suite of other actions to benefit bull trout. *See* MC11808 (noting per 2013
Conservation Strategy, that Flat Creek and two other culvert barriers "currently
limit the distribution of bull trout," that Flat Creek "is the #1 priority" because it
could open up 1.7 miles of habitat, and that "NEPA for these three culvert
replacements was completed" in 2010); FWS2352 (2012 BO on Travel

14

Management Plan, noting Flat Creek replacement among other actions "designed to reduce the impacts" to bull trout).  The Flat Creek culvert work was properly discussed in the baseline section of the Bull Trout BO. FWS29; 50 C.F.R. § 402.02 (baseline includes the "anticipated impacts of all proposed federal projects in the action area that have already undergone formal [] consultation"). Independently, FWS exercised its discretion to require that this long-planned, separately authorized work be carried out before implementing a specific portion of the Project. FWS55. Simply put, any effects from the Flat Creek culvert work are not "effects of the" Project and they need not be analyzed in the Bull Trout BO. *See* 50 C.F.R. § 402.14(g)(3).

## III.    CONCLUSION

Accordingly, the Court should deny Plaintiffs' motion for summary judgment, grant Federal Defendants' cross-motion, and enter judgment for Federal Defendants.


Respectfully submitted on this 2nd day of May, 2025.


ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division


*/s/ Shaun M. Pettigrew*
SHAUN M. PETTIGREW

Senior Trial Attorney, CA Bar No. 254564
Natural Resources Section
c/o NOAA Damage Assessment
7600 Sand Point Way, NE
Seattle, WA 98115
(202) 532-5973
shaun.pettigrew@usdoj.gov

JOSEPH W. CRUSHAM
Trial Attorney, CA Bar No. 324764
Wildlife & Marine Resources Section
150 M Street, N.E.
Washington, D.C. 20002
(202) 307-1145
joseph.crusham@usdoj.gov

*Counsel for Federal Defendants*

## **CERTIFICATE OF COMPLIANCE**

Under Local Rule 7.1(d)(2)(e), I hereby certify that the foregoing brief contains 3,461 words, excluding caption, certification of compliance, table of contents and authorities, and certificate of service.

/s/Shaun M. Pettigrew
Shaun M. Pettigrew
*Counsel for Federal Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will provide service to counsel for the parties.

/s/Shaun M. Pettigrew
Shaun M. Pettigrew
*Counsel for Federal Defendants*